UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

| | |
|---|---|
| JAMES REED HARRIS, | |
| Petitioner, | Civil Action No. 7:08-CV-32-KKC |
| v. | |
| HECTOR A. RIOS, JR., | MEMORANDUM OPINION AND ORDER |
| Respondent. | |

\*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*

James Reed Harris ("Harris") is a prisoner incarcerated at the United States Penitentiary-Big Sandy in Inez, Kentucky ("USP-Big Sandy"). In his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, Harris alleges that the Bureau of Prisons ("BOP") violated its own regulations or his rights under the Due Process Clause of the Fifth Amendment during four disciplinary proceedings, and seeks an order expunging the resulting convictions and sanctions. [R. 2] The Court will deny the petition[1] because Harris failed to administratively exhaust most of his claims, and those which were properly exhausted fail to establish any violation of his constitutional rights.

## DISCUSSION

In his petition, Harris challenges four disciplinary convictions against him at various federal prisons as having been imposed in violation of applicable BOP regulations, the Due Process Clause of the Fifth Amendment to the Constitution of the United States, or both. The Court will evaluate

---

[1] Once a petition is filed, the Court reviews it pursuant to 28 U.S.C. § 2243 to determine whether it states a viable claim for relief. *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002). Because Harris is not represented by an attorney, his petition is held to a more lenient standard. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). When reviewing the petition, the Court assumes that the facts alleged are true, and draws all reasonable inferences in the petitioner's favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). If the petition fails to establish adequate grounds for relief, the Court may deny the petition or make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

Harris's allegations with respect to each disciplinary conviction separately.

**1. Incident Report 1234904, Code 112 violation for using codeine and morphine.**

On June 19, 2004, while incarcerated at the United States Penitentiary in Lompoc, California, Harris provided a urine sample for drug testing to a BOP officer. On June 25, 2004, test results received from an outside laboratory stated that the sample tested positive for codeine and morphine. The officer confirmed with the prison's medical department that Harris did not have a prescription for either of these drugs, and then filed an Incident Report charging Harris with a Code 112 violation for use of any narcotic or drug not authorized by medical staff. See BOP Program Statement 5270.07, Ch. 4, pg. 5. The Incident Report was delivered to Harris the next day.

On July 29, 2004, a Disciplinary Hearing Officer ("DHO") held a hearing on the charge. On various forms, Harris had nonspecifically denied his guilt, stating simply "not me" and "what they found was not mine." The DHO noted that the officer performing the tests identified Harris during the test procedure; the chain of custody form signed by Harris contained his acknowledgment that the sample provided was his; and that the tests returned a positive result for prohibited drugs. In his August 25, 2004 Report, the DHO found Harris guilty of the charge and imposed various sanctions, which included the loss of Good Conduct Time ("GCT"). The Report was delivered to Harris on August 26, 2004.

On September 9, 2004, Harris challenged the disciplinary conviction by filing a Form BP-230 with the BOP's Western Regional Office ("WRO"). In his appeal, assigned Administrative Remedy ID #351575-R1, Harris contended that the sample he gave got mixed up with someone else's, and that the signature on the chain of custody form stated "Joe Hines," not his own, as proof of this fact. On September 27, 2004, WRO responded that it was "directing staff to rewrite the incident report

and conduct a rehearing in this matter," although it did not expressly state its grounds for doing so.

On October 14, 2004, the DHO filed an amended Report. The amended Report was identical to the original report except for the addition of a paragraph noting that the DHO relied upon a June 19, 2004 memorandum from the testing officer which indicated that when "the officer then handed you the Chain of Custody sheet for your signature to which you were witnessed signing as 'Joe Hines.'" The DHO again found Harris guilty of the violation and imposed the same sanctions. The Report was delivered to Harris on October 28, 2004.

On November 11, 2004, Harris again appealed the conviction to WRO. His appeal, assigned Administrative Remedy ID #358462-R1, implicitly challenged the authenticity of the testing officer's June 19, 2004 memorandum, suggesting that it was manufactured after-the-fact to conceal a mistake in the chain of custody. On November 22, 2004, the WRO rejected that challenge and upheld the DHO's finding and sanction. On December 1, 2004, Harris appealed that determination by filing a Form BP-231 with the BOP's Central Office, again challenging the authenticity of the June 19, 2004 memorandum. On February 23, 2005, the Central Office denied that appeal.

In his petition, Harris challenges this conviction on numerous grounds, including:

1. The investigating officer did not conduct an adequate investigation as required by BOP regulations;

2. Harris did not sign the chain of custody form, and the testing officer's memorandum asserting otherwise was fabricated after the initial hearing and back-dated;

3. The laboratory which conducted the tests of his urine sample did not apply the testing tolerances for minimum concentrations that were required by its contract with the BOP;

4. Harris's staff representative did not provide adequate representation because he failed to notice each of the alleged defects above or assert them as defenses at the hearing; and

3

>     5.    The DHO failed consider all of the evidence because he did not consider each of the alleged defects identified above, or conduct a new investigation or hearing after initial remand.

Whatever the merits of most of these claims, Harris only challenged his conviction on the second ground during the inmate grievance process. Because Harris never raised the other claims through the BOP's inmate grievance system, they are not administratively exhausted and the Court will not consider them. *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 689 (E.D. Ky. 2004); *Wesley v. Lamanna*, 27 Fed.Appx. 438, 2001 WL 1450759 (6th Cir. 2001).

Harris's claim regarding the DHO's attribution of the signature on the chain of custody form to him is a challenge to the sufficiency of the evidence used to convict him. Due process requires that a prison disciplinary conviction which increases the duration of the inmate's confinement be supported by at least "some evidence." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455 (1985). But "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." To explain why the chain of custody form bore the signature of "Joe Hines" rather than James Harris, the testing officer submitted and signed a memorandum explaining that Harris had signed the form using the name Joe Hines instead of his given name, an explanation the DHO accepted as more credible than Harris's contention that he did not sign the document. The Court does not review that credibility determination, but notes only that the signed memorandum explaining the discrepancy provided the DHO with "some evidence" to support the disciplinary conviction. *Hill* does not require more, and Harris's claim regarding this conviction must fail.

**2. Incident Report 1371791, Code 110 violation for refusing to provide a urine sample.**

On August 14, 2005, while incarcerated at the United States Penitentiary in Victorville,

4

California, Harris was given a specimen bottle by BOP staff and directed to provide a urine sample. When Harris turned towards the toilet, the officer observed Harris remove a plastic bag from his pants and empty a clear liquid into the specimen bottle. When the officer told Harris to give him the bag, Harris first placed the bag into his pants, then into his mouth. When the officer persisted, Harris flushed the bag down the toilet, and subsequently refused to provide a urine sample. The same day, the officer filed an Incident Report charging Harris with a Code 110 violation for refusing to provide a urine sample. See BOP Program Statement 5270.07, Ch. 4, pg. 5. The Incident Report was delivered to Harris the next day.

On August 24, 2005, the DHO held a hearing on the charge. In his September 15, 2005, Report, the DHO rejected Harris's blanket denials, found him guilty of the infraction, and imposed sanctions which included the loss of GCT. The Report was delivered to Harris the same day.

On October 11, 2005, Harris challenged the disciplinary conviction by filing a Form BP-230 with WRO, which was assigned Administrative Remedy ID #392936-R1. In his appeal, Harris contended that he did not receive a copy of the Incident Report until two weeks after the DHO hearing; the testing officer "framed" him because he felt animosity towards Harris; and BOP regulations do not permit the "no-contact" visitation penalty imposed. WRO denied Harris's appeal in a Response dated November 7, 2005, but Harris did not receive the response until December 8, 2005.

Harris filed an appeal to the Central Office on January 2, 2006 on the same grounds asserted before WRO. Harris included with his Form BP-231 a note indicating that he did not receive the Response from WRO until December 8, 2005, along with a typed cover sheet, presumably for WRO's Response, with the handwritten notation "Received on 12/8/05 by Unit 1. E. Rardin CSW."

5

Nonetheless, on January 10, 2006, the Central Office issued a Rejection Notice which stated:

> Your appeal was due on 12-07-05. You will need staff verification on BOP letterhead to document that your untimeliness was not your fault.

Harris had no further communications with the Central Office regarding this grievance.

In his petition, Harris challenges this conviction on numerous grounds, including:

1. Harris did provide a clean urine sample, but the testing officer failed to properly secure it, resulting in its disappearance;

2. Harris did not sign the chain of custody form, but it was signed on his behalf by a second BOP officer as part of a conspiracy to find him guilty of a code violation;

3. The written reports regarding the incident filed by the two BOP officers were inconsistent;

4. The investigating officer did not conduct a complete investigation regarding each of the issues identified above;

5. The DHO did not consider all of the evidence by considering each of the issues identified above; and

6. Harris exhausted his administrative remedies by providing a timely appeal to the Central Office and providing a written explanation regarding the delay in his receipt of WRO's Response.

Harris failed to administratively exhaust any of these claims because he abandoned the inmate grievance process prior to its completion. Harris's contention that the Central Office was required to accept an unauthenticated, handwritten notation on a piece of paper, which made no reference to a particular Administrative Remedy ID number, as definitive proof that he received WRO's Response on December 8, 2005, is meritless. The Central Office invited Harris to provide adequate evidence to excuse the late filing by having officer Rardin confirm the date the document was delivered to him by sending a letter on BOP letterhead directly to the Central Office. By failing to do so, Harris failed to exhaust his administrative remedies, and the Court need not consider his

claims. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002) (inmate's failure to cure deficiency which resulted in prison's proper rejection of grievance appeal renders claim unexhausted).

Even were the Court to excuse this procedural shortcoming, of the many claims Harris pursues in his petition, the only one asserted in his grievance before WRO and his appeal was his claim that testing officer "framed" him by misplacing or destroying a urine sample Harris alleges was clean. In finding Harris guilty of the charge, the DHO relied upon written statements provided by two BOP officers that Harris tried to alter the sample, then destroyed evidence that he attempted to do so, and then refused to provide a urine sample. This testimony constitutes "some evidence" to support the charge, *Hill*, 472 U.S. at 455, and Harris therefore fails to state a due process claim.

### 3. Incident Report 1390558, Code 112 violation for using morphine.

On September 30, 2005, while incarcerated at the United States Penitentiary in Victorville, California, Harris provided a urine sample for drug testing to a BOP officer. On October 11, 2005, test results received from an outside laboratory stated that the sample tested positive for morphine. That day, the officer confirmed with the prison's medical department that Harris did not have a prescription for morphine, and then filed an Incident Report charging Harris with a Code 112 violation for use of any narcotic or drug not authorized by medical staff. See BOP Program Statement 5270.07, Ch. 4, pg. 5. The Incident Report was delivered to Harris the next day.

On October 18, 2005, the Unit Disciplinary Committee ("UDC") held a hearing on the charge, but referred the matter to the DHO for further hearing. On October 26, 2005, the DHO held a hearing on the charge. In his November 7, 2005, Report, the DHO found that, based upon the account of the testing officer, Harris supplied the urine specimen and signed the chain of custody form. The DHO then found Harris guilty of the offense and imposed sanctions which included the

loss of GCT. The Report was delivered to Harris the same day.

On November 26, 2005, Harris challenged the disciplinary conviction by filing a Form BP-230 with WRO, which was assigned Administrative Remedy ID #397354-R1. In his appeal, Harris contended that he did not sign the chain of custody form; the officer who filed the Incident Report was not the testing officer and could not personally attest that Harris provided the urine sample; the laboratory which conducted the tests of his urine sample did not apply the testing tolerances for minimum concentrations that were required by its contract with the BOP; the sanction of allowing Harris only "no contact" visits with his family is not permitted under BOP regulations; and his request for a witness statement from the testing officer regarding collection of the urine specimen was not honored.

On December 19, 2005, WRO issued its Response denying Harris's appeal. Harris alleges that he never received this response, but that upon persistent inquiry, was told by a BOP officer on February 12, 2006, that the grievance had been closed and that his case manager probably had WRO's Response. Harris apparently took no further steps to pursue an administrative appeal.

Harris's petition challenges this disciplinary conviction on several grounds, including:

1. Harris requested that a staff member represent him at the hearing, and his initials indicating a waiver of that right are a forgery;

2. Harris requested that the staff member who collected the urine sample testify at the hearing, and his initials indicating a waiver of that right are a forgery;

3. Harris did not sign the chain of custody form;

4. The laboratory which conducted the tests of his urine sample did not apply the testing tolerances for minimum concentrations that were required by its contract with the BOP;

5. The DHO failed consider all of the evidence because he did not consider each of the alleged defects identified above; and

8

> 6. Harris exhausted his administrative remedies because he was prevented from appealing to the Central Office by BOP staff who failed to deliver WRO's denial of his grievance at that level.

As with his prior claim, Harris's decision to simply abandon the grievance process renders his claims regarding this disciplinary conviction unexhausted, and therefore barred. Courts require petitioners to pursue the administrative remedy process with due diligence, and that diligence requires them to pursue any available avenue for administrative review of their claim. Here, applicable BOP regulations permitted Harris to treat WRO's failure to respond after 30 days as a denial at that level from which he could appeal to the Central Office. 28 C.F.R. § 542.18. Further, once Harris became aware that WRO had rendered a decision but that there was a substantial delay in its delivery to him, he could have filed an appeal to the Central Office which included an explanation from staff on BOP letterhead verifying the delay in delivery. Instead, Harris simply abandoned the grievance. As explained in a case cited favorably by this Court before, due diligence requires more:

> Mendoza's claim that he never received a copy of the superintendent's adverse decision, which must be accepted for purposes of this motion in light of the factual dispute, is not material to this result. If, as a result of negligent error by prison officials-or even their deliberate attempt to sabotage a prisoner's grievance-the prisoner does not receive a copy of the decision on his complaint, he is not thereby forestalled from appealing ... The regulations mandate a prompt decision on all grievances ... and specifically provide that if the determination is delayed, the inmate may appeal to the next level of review ... without waiting for administrative action. ... Thus, even accepting Mendoza's claim that he was never notified of the rejection of his grievance (or even had that rejection never occurred), the regulations clearly permit an appeal, and filing such an appeal is accordingly required by § 1997e(a) before a suit can be brought in federal court. This inescapable conclusion has been consistently and unsurprisingly reached by courts in this district.

*Mendoza v. Goord*, 2002 WL 31654855 (S.D.N.Y. 2002) (unpublished disposition) (inmate failed to administratively exhaust excessive force claim against officers by failing to further pursue appeal

where regulations permitted appeal if agency failed to render decision within time required by regulations) (*citing Martinez v. Williams*, 186 F.Supp.2d 353, 357 (S.D.N.Y. 2002) (inmate who allegedly received no response to grievance "could have and should have appealed the grievance in accordance with grievance procedures") and *Gibson v. Goord*, 280 F.3d 221 (2nd Cir. 2002)).

Even were Harris's failure to exhaust this claim excusable, his claims would fail on the merits. To the extent Harris challenges the disciplinary conviction based upon the use of the wrong testing parameters under its contract with the BOP, or the UDC chairperson's failure to hold a hearing within the time required by BOP regulations, it is well established that the requirements of Due Process are defined by the United States Constitution, not by an agency's internal regulations or guidelines. *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Accordingly, an agency's failure to adhere to its own guidelines does not state a Due Process claim. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004).

The only question then is whether the requirements of the Constitution have been satisfied. Harris's third and fourth claims challenge the sufficiency of the evidence that he had used morphine. The DHO considered the statement of the testing officer that Harris had provided the sample to establish that the urine being tested belonged to Harris, and considered the testing laboratory's report that morphine was found in the sample tested to establish that Harris had used morphine. The Court's responsibility under *Hill* is not to weigh this evidence or assess its probative value, but merely to determine that at least some evidence exists to support the conviction, *Hill*, 472 U.S. at 455, a standard readily satisfied here.

Harris's first and second claims are that he requested a staff representative and a witness, but that his request was not honored. In the UDC's form indicating that the charge was being referred

10

to the DHO for hearing, two check boxes indicate that Harris requested officer Bacon as his staff representative and officer Moore to testify as a witness. However, that same form contains a handwritten note which states "Inmate waives SR & witnesses" and includes the initials "JH." Harris contends that he did not waive these rights to a staff representative or a witness, and the note suggesting he did is a fabrication by members of the UDC committee after the UDC hearing was held. Even were the Court to entertain the notion that BOP staff falsified an official document, Harris's allegation is directly contradicted by the November 7, 2005 DHO Report. The DHO, who is not an employee of any particular prison and who travels between prisons to conduct hearings, stated in his report that:

> The inmate decided to waive his right to a staff representative, and his right to call witnesses. The Notice of Rights Before the DHO form was amended, and the inmate signed this document.

The DHO Report therefore indicates that Harris waived his rights during the DHO hearing, not that the waiver was manufactured after the UDC hearing as he alleges. Absent any credible basis to conclude that Harris did not waive these rights during the DHO hearing, his due process claims fail as a matter of law.

4. **Incident Report 1518558, Code 222 violation for using intoxicants.**

On September 28, 2006, while incarcerated at the United States Penitentiary in Hazelton, West Virginia, Harris submitted to a random Breathalyzer test which produced a reading of 0.077. Harris was placed in a holding cell, and when re-tested 45 minutes later he again produced a reading of 0.077. The testing officer prepared an Incident Report charging Harris with a Code 222 violation for using intoxicants. See BOP Program Statement 5270.07, Ch. 4, pg. 9. The Incident Report was delivered to Harris on September 30, 2006.

11

On November 16, 2006, the DHO held a hearing on the charge, during which Harris questioned the validity of the readings because the same reading was observed in two readings taken 45 minutes apart, and challenged the failure of staff to provide him with a copy of the charge within 24 hours after the incident. Based upon the testimony of the testing officer that the Breathalyzer was functioning properly and had reported different readings for the initial and confirming tests given to other inmates that evening, the DHO found Harris guilty of the charge and imposed sanctions, including the loss of GCT. The DHO prepared his written report on December 20, 2006, which was delivered to Harris on February 22, 2007.

On February 27, 2007, Harris filed his Form BP-230 with the Mid-Atlantic Regional Office ("MARO"), and his appeal was assigned Administrative Remedy ID # 445184-R1. In his appeal, Harris contended that the Breathalyzer must have malfunctioned because it could not have properly returned identical readings taken 45 minutes apart in light of the body's metabolization of alcohol, and he was prejudiced by the delay in receiving a DHO hearing because the Breathalyzer could not be found at the time of the hearing. After MARO extended its time to file a Response, on June 5, 2007, MARO issued a Response indicating it would not issue a formal Response because of an administrative backlog in responding to inmate grievances, and directing Harris to file any appeal within 30 days. Harris filed his appeal to the Central Office on July 1, 2007, which was denied on September 18, 2007.

In his petition, Harris challenges this disciplinary conviction on several grounds:

1. The testing officer did not adhere to BOP guidelines because he failed to conduct the initial and confirming tests 15 minutes apart; failed to ensure Harris was not permitted to eat, drink or smoke before the test was performed; failed to use a Breathalyzer model identified in the regulations; and failed to maintain a maintenance log or perform calibration checks.

12

2. BOP staff did not notify Harris of the charges within 24 hours after the incident as required by BOP regulations.

3. The investigating officer did not conduct an adequate investigation as required by BOP regulations;

4. The UDC determined to refer the matter to the DHO before holding a UDC hearing as required by BOP regulations;

5. Harris's staff representative failed to adequately represent him during the DHO hearing; and

6. The DHO failed to consider all of the evidence by requiring the testing officer to produce the calibration and accuracy logbooks for the Breathalyzer.

Of these claims, the only claim Harris properly presented and exhausted through the grievance process was his claim regarding the validity of the Breathalyzer test, specifically his allegation that the device must have malfunctioned in light of the identical readings 45 minutes apart. Harris's other allegations were never raised during the grievance process, and the Court will therefore not consider them. *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 689 (E.D. Ky. 2004); *Wesley v. Lamanna*, 27 Fed.Appx. 438, 2001 WL 1450759 (6th Cir. 2001).

Harris's claim regarding the results of the Breathalyzer test constitute a challenge to the sufficiency of the evidence used to establish his blood alcohol level. The DHO Report indicates that Harris raised this issue during the hearing, at which time the DHO called the testing officer as a witness. The officer testified that the Breathalyzer was functioning properly that evening, that it had given different results for the initial and confirming readings given to other inmates tested that evening, and had given identical readings for the initial and confirming readings given to other inmates in the past. The DHO determined from this testimony that the Breathalyzer was functioning properly on that evening and that Harris had committed the offense. That determination was supported by "some evidence" in the record, and must therefore be upheld.

13

*Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455 (1985).

### III. CONCLUSION

Accordingly, it is **ORDERED** that:

1. Harris's petition for a writ of habeas corpus [R. 2] is **DENIED.**

2. The Court certifies that any appeal would not be taken in good faith.  28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

Dated this 26th day of May, 2009.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge